UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROBERT F. BARNARD, as the Personal
Representative of the Estate of
RAYMOND PAULK, and
ROBIN BAXLEY, as the Personal
Representative of the Estate of
MICHAEL JESSE SCARBERRY,

        Plaintiffs,

vs.                                    CASE NO.: 5:10-cv-00213-RS-CJK

GEICO General Insurance Company,

        Defendant.

_____/

## GEICO'S MOTION FOR SUMMARY JUDGMENT

      Defendant, **GEICO GENERAL INSURANCE COMPANY** ("GEICO"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Northern District Local Rules 7.1 and 56.1, respectfully requests that this Honorable Court enter summary judgment in favor of GEICO and, in support of its request, states as follows:

      1.  The present action is a consolidated insurance bad faith action brought by Plaintiff, ROBIN BAXLEY ("BAXLEY"), as the Personal Representative of the Estate of MICHAEL JESSE SCARBERRY ("SCARBERRY"), and Plaintiff ROBERT F. BARNARD ("BARNARD"), as the Personal Representative of the Estate of RAYMOND PAULK (collectively "Plaintiffs"), against GEICO [See Docket Entry ("DE")/Consolidated 103][1].

---

[1] GEICO will refer to Docket Entries in both the BAXLEY action and the consolidated action.

This Court consolidated BAXLEY's and BARNARD's actions on October 22, 2010 [*Id*].

2.  The Plaintiffs' Complaints allege that GEICO acted in bad faith in handling a claim brought by BAXLEY against Layura Sellers and RAYMOND PAULK arising from an automobile accident that took place on January 7, 2005.  [DE/BAXLEY 1, at Exhibit A, and DE/Consolidated 1].

3.  GEICO attempted in good faith to settle the subject claim within the applicable policy limits, but was met with non-cooperation by BAXLEY and/or her attorney.  Therefore, this Court should grant summary judgment in GEICO's favor as to both Plaintiffs' causes of action because no reasonable jury could find that GEICO acted in bad faith in handling BAXLEY's claim against Layura Sellers and RAYMOND PAULK.

## **MEMORANDUM OF LAW**

### I.    **Summary judgment standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED.R.CIV.P.56(c)(2); *see also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  As the United States Supreme Court stated in *Celotex*, "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually

---

For entries that occurred prior to the consolidation, GEICO will use the citation "DE/BAXLEY."  For entries that occurred after the consolidation, GEICO will use the citation "DE/Consolidated."

unsupported claims or defenses and we think it should be interpreted in a way that allows it to accomplish this purpose." *Id.* at 323-24 (citations omitted).  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)(*citing Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992)).  An issue of material fact is "'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Allen*, 121 F.3d at 646 (citations omitted).

Initially, the burden is on the moving party to "show, by reference to materials on file, that there are no genuine issues of material fact to be determined at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000)(*citing Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)).  The movant may meet this burden by presenting evidence showing no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *See Celotex*, 477 U.S. at 322-23.  Once the moving party has satisfied its burden, the burden shifts to the nonmoving party, who must show "that summary judgment would be inappropriate because there exists a material issue of fact."  *Mullins*, 228 F.3d at 1313. Summary judgment for the moving party should be granted when the evidence favoring the nonmoving party is "merely colorable . . . or is not significantly probative."  *Anderson*, 477 U.S. at 249-50.  "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary

judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)(*citing Anderson*, 477 U.S. at 252).

## II.    The duty of good faith

### A.    The law of bad faith in Florida.

Florida law provides that insurers owe "a duty to their insureds to refrain from acting *solely on the basis of their own interests* in settlement," otherwise known as the duty of "good faith." *State Farm Mut. Auto Ins. Co. v. LaForet*, 658 So.2d 55, 58 (Fla. 1995)(emphasis added). The duty of good faith obligates an insurer to handle claims brought against its insureds with "the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Boston Old Colony v. Gutierrez*, 386 So.2d 783 (Fla. 1980)(*citing Auto Mutual Indemnity Co. v. Shaw*, 184 So. 852 (Fla. 1938)); *see also Farinas v. Florida Farm Bureau Gen. Ins. Co.*, 850 So.2d 555, 559 (Fla. 4th DCA 2003); *Berges v. Infinity Ins. Co.*, 896 So.2d 665, 668-69 (Fla. 2004); *Clauss v. Fortune Ins. Co.*, 523 So.2d 1177, 1178 (Fla. 5th DCA 1988). "This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Gutierrez*, 386 So.2d at 785 (internal citations omitted).

The duty of good faith also obligates an insurer to initiate settlement negotiations

4

"[w]here liability is clear, and [the] injuries so serious that a judgment in excess of the policy limits is likely. . ." *See Powell v. Prudential Property & Casualty. Ins. Co.*, 584 So.2d 12, 14 (Fla. 3d DCA 1991). However, the insurers' duty to initiate settlement negotiations when liability is clear and an excess judgment is likely does not strip an insurer of its duty and right to fully investigate claims. *See Johnson v. GEICO General Ins. Co.,* 318 Fed.Appx. 847 (11th Cir. 2009)("An insurer-acting with diligence and due regard for its insured-is allowed a reasonable time to investigate a claim; no obligation exists to accept a settlement offer (or to tender policy limits in advance of a settlement offer) without time for investigation."); *Clauss*, 523 So.2d 1177; *DeLaune v. Liberty Mutual Ins. Co.*, 314 So.2d 601, 603 (Fla. 4th DCA 1975)("Since when does one party to a lawsuit have to accept at face value the medical information furnished by the other party without even any inquiry?").

The duty of good faith exists to protect insureds who have surrendered control over the defense of their claims, including decisions regarding litigation and settlement, to their insurers pursuant to the insurance contract. *See Gutierrez*, 386 So.2d at 785; *see also Farinas*, 850 So.2d at 559. A breach of this duty by an insurer which causes the entry of a judgment against its insureds in excess of the applicable policy limits gives rise to a claim for "bad faith." *See id.* An insurer may be held liable for an excess judgment against its insured if, and only if, the insurer is found to have breached its duty of good faith to its insured. *See Campbell v. Government Employees Ins. Co.*, 306 So.2d 525, 530-531 (Fla. 1974)*.

Florida law clearly provides that bad faith is more than mere negligence. *See id.* at

5

530-531 (stating, "In *Auto Mutual Indemnity Co. v. Shaw*, supra, we aligned Florida with those states whose standards for determining liability in an excess judgment case is bad faith rather than negligence.")(emphasis added); *see also DeLaune*, 314 So.2d at 603 (". . . a cause of action based solely on negligence which does not rise to the level of bad faith does not lie.").  While negligence is a factor that the court may consider when determining whether an insurer acted in bad faith, an insurer that is negligent in handling a claim against its insured, but whose actions do not rise to the level of bad faith, cannot be held liable for an excess judgment.  *See Gutierrez*, 386 So.2d at 785; *Campbell*, 306 So.2d at 530-531; *DeLaune*, 314 So.2d at 603.  To prove that an insurer acted in bad faith, the insured must show behavior on the part of the insurer that amounts to more than ordinary negligence.  *See id.*

Florida law applies a "totality of the circumstances" test to insurance bad faith cases. *See Berges*, 896 So.2d at 680.  The factors that courts consider when determining whether, under the totality of the circumstances, an insurer acted in bad faith will differ depending on the facts of each case. *See id.*; *Williams v. Infinity Ins. Co.*, 745 So.2d 573 (Fla. 5th DCA 1999)(a factor considered by the court was whether the offer to settle made to the insurer would have protected the insured); *Powell*, 584 So.2d at 14 (a factor that may be considered is whether there was "no realistic possibility of settlement within the policy limits").  There is no comprehensive list of factors that courts must weigh when determining whether an insurer acted in bad faith; the criteria that are relevant will differ based on the facts of each individual case.

Finally, Florida law provides that the focus of a claim for bad faith should be on the conduct of the insurer. *See Berges*, 896 So.2d at 677. However, it is well established that the claimant's unwillingness to settle the claim is relevant to whether the insurer acted in bad faith under the totality of the circumstances, and is a factor that must be considered. *See Barry v. GEICO General Ins. Co.*, 938 So.2d 613 (Fla. 4th DCA 2006)(stating that the conduct of the underlying claimant's attorney is relevant to an insurer's defense that there was no realistic opportunity to settle, and that introduction of such evidence was appropriate); *DeLaune*, 314 So.2d at 603; *Snowden v. Mutual Casualty Co.*, 358 F.Supp. 2d 1125, 1129 (N.D. Fla. 2003).

**B.     Summary judgment in bad faith cases**

Summary judgment in favor of an insurer is appropriately granted when a court determines that, as a matter of law, the insurer did not act in bad faith. *See Berges*, 896 So.2d at 680; *Gutierrez*, 386 So.2d at 785; *Campbell*, 306 So.2d at 530-31; *State Farm Fire & Casualty Co. v. Zebrowski,* 706 So.2d 275, 277 (Fla. 1997). Many Florida state courts, as well as federal courts applying Florida law, have granted summary judgment in favor of insurers after making such a determination. *See*, *e.g.*, *Gutierrez*, 386 So.2d at 785-86; *Zebrowski*, 706 So.2d 275; *RLI Ins. Co. v. Scottsdale Ins. Co.*, 691 So.2d 1095 (Fla. 4th DCA 1997).

In *Clauss v. Fortune Ins. Co.*, 523 So.2d 1177, Florida's Fifth DCA held that summary judgment was appropriate because there was not sufficient evidence of bad faith conduct on the part of Fortune. *See id.* at 1178. The holding in *Clauss* makes it clear that an

insurer who acts reasonably in its efforts to settle a claim may not be found liable for bad faith even when the claim fails to settle.  Similarly, in *Caldwell v. Allstate Ins. Co.*, 453 So.2d 1187 (Fla. 1st DCA 1984), the First DCA found that it could not "reasonably be said that Allstate or its counsel was guilty of the kind of conduct which has typified those cases in which the courts have found the existence of bad faith." *Id*. at 1190.  Florida's Third DCA also affirmed a trial court's grant of summary judgment in favor of an insurer in *Cruz v. American United Ins. Co.*, 580 So.2d 311 (Fla. 3d DCA 1991). The Third DCA established that the standard for whether an insurer has acted in bad faith, when the bad faith alleged is the insurer's settlement conduct, is whether the insurer's actions were reasonable. *Id.* at 312.

Federal courts interpreting Florida law also consistently enter summary judgment in favor of insurers.  For example, the Eleventh Circuit Court of Appeals, in *Shin Crest PTE, LTD., et al. v. AIU Insurance Co.* 368 Fed.Appx. 14 (11th Cir. 2010), affirmed the decision of the United States District Court ("USDC") for the Middle District of Florida granting summary judgment in favor of an insurer. In *Johnson v. Geico General Ins. Co.*, 318 Fed.Appx. 847 (11th Cir. 2009)(unpublished), the Eleventh Circuit upheld a ruling by the Southern District granting summary judgment in favor of an insurer where the undisputed facts demonstrated that the insurer did not act in bad faith.  In *Johnson*, the insureds alleged that their insurer failed to timely tender the policy limits.  The Eleventh Circuit held that, as a matter of law, an insurer is allowed a reasonable time to investigate a claim before tendering its policy limits. *See id.* at 851.

In *Aboy v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 3394405 (11th Cir.

2010)(unpublished), the Eleventh Circuit affirmed the decision of the USDC of the Southern District of Florida. *See* 2010 WL 727967 (S.D.Fla. 2010). The *Aboy* court held that a delay of approximately seven (7) months from when the insurer learned of the claim to when it offered its policy limits was not bad faith, where the insurer requested that the claimant cooperate by providing a signed medical authorization form and where the claimant ignored the insurer's request. Citing to *Johnson* and *Shin Crest*, the *Aboy* court held that State Farm had the right to investigate the claim before initiating settlement discussions and that "Aboy's contention that State Farm was obligated to move forward with settlement negotiations even though Aboy repeatedly ignored State Farm's requests for medical records is unpersuasive." *Aboy*, 2010 WL 727967 at *5.

In *Maldonado v. First Liberty Ins. Co.*, the Eleventh Circuit Court of Appeals affirmed a summary judgment entered in favor of an insurer on the basis that "a finding of bad faith was precluded as a matter of law" because the plaintiff had failed to prove that the insurer breached the applicable standard of care. *Maldonado*, 342 Fed.Appx. 485, 487-488 (11th Cir. 2009). "There is no evidence in the record that First Liberty tried to avoid or delay settlement, was more concerned with its own interests over the Clinches', or in any way obstructed a settlement of this case. That is the type of conduct that is the essence of bad faith, and it is utterly lacking here." *Maldonado v. First Liberty Ins. Corp.*, 546 F.Supp.2d 1347 (S.D.Fla. 2008).

The Eleventh Circuit Court of Appeals also affirmed summary judgment in favor of an insurer in *Keifer v. Government Employees Ins. Co.*, Case. No. 3:00-cv-132/LAC, (N.D.

Fla. Sep. 11, 2001)(unpublished)[Exhibit CC][2], *aff'd* case no. 01-15545, 37 Fed.Appx. 500 (11th Cir. May 7, 2002)(unpublished).  In its opinion, the Eleventh Circuit stated that "Florida appellate courts have affirmed summary judgment where the undisputed facts would allow no reasonable jury to conclude the defendant acted in bad faith." *Id.* at 7.  In *Williams v. GEICO General Ins. Co.,* the Eleventh Circuit affirmed the USDC for the Northern District of Florida's entry of summary judgment, concluding that "there is insufficient record evidence that would lead a rational trier of fact to conclude that GEICO acted in bad faith" in handling the claim.  *See* 143 F.Appx. 275 (11th Cir. 2005)(unpublished).  As an additional example, the USDC for the Southern District of Florida determined that summary judgment in the insurer's favor was appropriate in *Francois v. Illinois Nat'l Ins. Co.*, 2002 WL 33760405 (S.D. Fla.)(unpublished), stating that "[t]he conduct in question must evidence a conscious disregard or indifference to the rights of the insured."  Similarly, the USDC for the Northern District of Florida granted summary judgment in favor of the insurer in *Green v. Omni Ins. Co., Case No. 3:00cv77/RV* (N.D.Fla., Jan. 11, 2001)(unpublished)[Exhibit DD].  *Green* demonstrates that federal courts, applying Florida law, must take into account what is reasonable when determining whether an insurer acted in good faith.

An additional example is the decision of the USDC for the Middle District of Florida in *Bankston v. Illinois National Ins. Co.*, Case. No. 6:01-cv-278-Orl-21DAB (M.D. Fla.

---

[2]

All exhibits referenced in the present Motion for Summary Judgment are attached to GEICO's Statement of Material Facts in Support of its Motion for Summary Judgment, which has been filed concurrently herewith.

10

March 6, 2002)(unpublished)[Exhibit EE], *aff'd* 54 Fed.Appx. 933 (11th Cir. Dec 13, 2002)(unpublished). The *Bankston* court held that it was not unreasonable for the insurer to insist that the unrelated persons be released from liability, that the insurer "was not acting in its own self-interest when it tendered the policy limits and the general release" and that the insurer had not acted in bad faith as a matter of law. The Court stated that "[w]hile [the insurer]'s claims adjusting might be subject to criticism, its conduct was motivated by a desire to protect the interest of its insured. Furthermore, there is no evidence that [the insurer's] request for a broad release was motivated by self-interest. In short, this is not the type of conduct that would warrant converting a $10,000 policy into a liability of over 1.5 million dollars." The court also noted that "[the claimant]'s attorney apparently made no effort to negotiate the terms of the release with [the insurer]. One could infer from this circumstance that [the claimant]'s attorney was **more interested in fabricating a potential bad faith claim than protecting his client's release rights**." (emphasis added). The Court's grant of summary judgment was affirmed by the Eleventh Circuit. *See Bankston*, 54 Fed.Appx. 933 (11th Cir. Dec 13, 2002)(unpublished).

Additionally, the USDC for the Middle District of Florida recently entered summary judgment in favor of the insurer in *Davidson, et. al. v. Government Employees Insurance Company* in an Order dated October 26, 2010. *See Davidson*, Slip Copy, 2010 WL 4342084 (M.D.Fla. Oct. 26, 2010). The Southern District also entered summary judgment in favor of the insurer in *Boateng v. GEICO General Insurance Company* in an Order dated November 22, 2010. *See Boateng*, 2010 WL 4822601 (S.D.Fla. 2010). In *Davidson*, this

Court entered summary judgment in the insurer's favor because "there [was] a complete absence of evidence that GEICO acted solely on the basis of its own interests" and that "no reasonable jury could possibly find that GEICO acted in bad faith." *Davidson*, 2010 WL 4342084 at p. 12. In its analysis, this Court reiterated the well-settled principle that "bad faith is more than mere negligence." *Id.* at p. 11. Similarly, the Southern District entered summary judgment in favor of the insurer in *Boateng*, finding that "no reasonable fact finder could determine that GEICO acted in bad faith." *Boateng*, 2010 WL 4822601. Important to the court's analysis was that GEICO promptly contacted its insured and the tort victim, investigated the matter, and provided the claimant with the policy limits. *See id.* There was simply "no evidence that GEICO sought to avoid settling Plaintiff's claims for the policy limits." *Id.*

A further example is the very recent decision of the USDC for the Middle District of Florida in *Cardenas v. GEICO Casualty Co.*, 2011 WL 111588 (M.D.Fla. 2011). In *Cardenas*, the court relied heavily on the fact that the underlying attorney failed to respond to repeated attempts by GEICO to contact him. *See id.* Ultimately, in granting summary judgment in favor of GEICO, the court stated that "[t]he facts of this action demonstrate no basis upon which a reasonable jury could conclude that GEICO acted 'solely on the basis of [GEICO's] own interest' in attempting to settle the claim. In fact, the facts demonstrate that Geico acted promptly, diligently, and with due concern for [the insured's] best interest." *Id.* at p. 9.

In short, Florida law clearly provides that bad faith claims are appropriately and

12

properly resolved by entry of summary judgment in favor of the insurer where the insurer did not, as a matter of law, act in bad faith. The present litigation involves an insurance bad faith claim that should be resolved by summary judgment in favor of GEICO.

## III.   GEICO is entitled to summary judgment in its favor

GEICO is entitled to summary judgment in its favor because no reasonable jury could conclude that GEICO acted in bad faith in handling BAXLEY's claim against Layura Sellers and RAYMOND PAULK. The undisputed material facts unequivocally demonstrate that GEICO was attempting to settle the subject claim. In fact, GEICO hand delivered a policy-limits check to BAXLEY's attorney just eleven (11) days after the accident was reported to GEICO. Thereafter, GEICO made extensive efforts to effectuate settlement, but was met with silence from BAXLEY's attorney for approximately seven months. No reasonable jury could conclude that GEICO put its own interests above those of its insureds, or that GEICO was in any way attempting to avoid paying the policy limits for BAXLEY's very serious claim. Therefore, GEICO is entitled to summary judgment in its favor as to the bad faith claims brought by both BAXLEY and BARNARD.

The cause of action for bad faith does not exist to provide unlimited insurance in every case that results in an excess judgment. However, Plaintiffs are attempting to convert the subject insurance policy into unlimited insurance coverage, despite the abundance of evidence that GEICO was attempting to settle BAXLEY's claim, but was met with non-cooperation by BAXLEY's attorney. An insurer cannot force settlement of a claim. The decision to settle a claim requires assent by both the insurer and the claimant. In every third-

13

party bad faith case, the insured has caused a loss to the injured claimant which has a value greater than the insured's policy limits. Those policy limits are set by the insured when he or she chooses to purchase a specified amount of coverage for a specified premium price. Unfortunately, those policy limits are not always sufficient to fully compensate a claimant for the damages caused to him by the insured. A claimant has no obligation to accept the policy limits of an insured and often has no incentive to do so. In fact, settlement within the policy limits is directly contrary to the interests of a claimant when the claimant's damages exceed the policy limits. Rather, it is in the claimant's interest to prevent settlement and to attempt to create a bad faith case against the insurer. The party to the claim settlement process that has a financial incentive to settle the claim is the insurer, due to the possibility that it may become liable for the full amount of the claimant's damages if the claimant can successfully thwart settlement and prevail on an eventual claim for bad faith.

The facts of this case do not justify converting a $10,000 per person/$20,000 per occurrence policy into unlimited insurance coverage. Rather, the undisputed facts demonstrate that GEICO fulfilled the duties imposed upon it by Florida law. GEICO investigated the facts of the subject accident, communicated with its insureds, and attempted in good faith to settle BAXLEY's claim against GEICO's insureds. In short, the undisputed facts of this case establish that at all times during the handling of BAXLEY's claim, GEICO used the same degree of care and diligence that a person of ordinary care and prudence should exercise in the management of his own business.

The issue to be resolved by this Court is whether GEICO was attempting in good

14

faith to reach a settlement of the claim brought by BAXLEY against GEICO's insureds, or whether GEICO was acting in its own self-interest to the detriment of its insureds. *See Davidson*, Slip Copy, 2010 WL 4342084 (M.D.Fla. Oct. 26, 2010); *Bankston*, Case No. 6:01-cv-278-Orl-21DAB. The undisputed facts clearly demonstrate that GEICO was trying in good faith to settle the claim. Therefore, GEICO cannot, as a matter of law, be found to have acted in bad faith, and cannot be held liable for the excess judgment entered against the insureds. *See Powell*, 584 So.2d at 14; *Johnson*, 318 Fed.Appx. 847 ("The essence of an insurance bad faith claim is that the insurer acted in its own best interests to the detriment of the insured; the insurer failed to act timely and thereby exposed the insured to an excess judgment."); *Bankston*, Case No. 6:01-cv-278-Orl-21DAB. Moreover, the undisputed facts of this case demonstrate that GEICO was the *only* party making a good faith attempt to settle the claim.

The same day that the accident was reported to GEICO, GEICO conducted a recorded interview of Winnie Paulk and explained to Mrs. Paulk the coverage provided under her insurance policy. [Exhibit E, GLC 2839]. Four days after learning about the accident, on January 12, 2005, GEICO confirmed that Hosam K. Zawahry ("Zawahry") of The Zawahry Firm, P.A. was representing BAXLEY, despite the fact that Zawahry failed to send GEICO a letter of representation. [Exhibit F, GLC 2842]. Then, on January 19, 2005, only eleven (11) days after GEICO was notified of the accident and seven (7) days after learning of The Zawahry Firm's representation, GEICO tendered a check for the **full policy limits** via hand-delivery to Zawahry's office. [Exhibit G, GLC 0957-0958; GLC 2843]. On or about

15

February 13, 2005, GEICO sent Zawahry a letter containing an Affidavit of Coverage. [Exhibit I, GLC 0965-0967].

Despite GEICO's good faith attempts to settle BAXLEY's claim by tendering a check for the full policy limits and proactively providing a release and Affidavit of Coverage, Zawahry failed to respond to GEICO's extensive efforts to communicate with him until approximately **seven months** after the accident. As explained in detail in GEICO's Statement of Material Facts, GEICO attempted to contact Zawahry twice in February, twice in March, three times in April, four times in May, four times in June, and twice in July. GEICO's attempts to contact Zawahry were made by telephone, in writing, and in person. *See* GEICO's Statement of Material of Facts in Support of its Motion for Summary Judgment, pp. 2-5, which specifically sets forth GEICO's extensive and exhaustive attempts to contact Zawahry. In total, between the date on which the accident was reported to GEICO and July 28, 2005, GEICO made no fewer than **sixteen** separate attempts to contact Zawahry, but was met with silence and non-cooperation. [Exhibit P, GLC 2846-2849; Exhibit Q, deposition of Zawahry at pages 153-154].

It is clear that ignoring an insurance company is a business practice on Zawahry's part because Zawahry testified at his deposition that he has had other cases in which he did not respond to repeated attempts by insurance adjusters to contact him regarding claims. [Exhibit R, deposition of Zawahry at page 154] ("I'm sure there have been cases where I have not returned phone calls from insurance adjusters"). In short, it is evident from the record that GEICO was attempting in good faith to settle BAXLEY's claim, but that

16

BAXLEY and/or her attorney were unwilling to settle for the policy limits. Instead, Zawahry chose to stonewall and ignore GEICO for more than half of a year.

After one hundred and eighty (180) days, the policy-limits check that GEICO delivered to Zawahry's office just eleven (11) days after learning about the accident expired. Therefore, on July 28, 2005, GEICO reissued the policy-limits check and again hand-delivered it to Zawahry's office. [Exhibit O, GLC 0937; GLC 0918-0919; SZ 02936]. Finally, after GEICO had been attempting to contact Zawahry for nearly **seven months**, Zawahry communicated with GEICO for the first time in a letter dated August 5, 2005. [Exhibit S, GLC 0918-0919; Exhibit Q, deposition of Zawahry at pages 153-154].

It is evident that Plaintiffs' basis for alleging that GEICO acted in bad faith in handling BAXLEY's claim against GEICO's insureds is that GEICO allegedly failed to meet the terms of Zawahry's August 5, 2005 correspondence. [Exhibit Y, GLC 0916-0917]. GEICO's conduct, however, simply does not rise to the level of bad faith and, in fact, was evidence of good faith claim handling. Because the August 5, 2005 letter used permissive terms, such as "I would like," "it looks like," and "please consider," to name a few, same did not place on GEICO a series of demands that needed to be met within a strict time frame. Instead, Zawahry's August 5th correspondence constituted an invitation to discuss settlement.

The undisputed material facts demonstrate that GEICO responded appropriately to Zawahry's August 5th invitation to discuss settlement. The first request in the subject letter stated as follows:

[P]lease consider whether you would be willing to waive having

17

> [an] estate opened and instead just have Ms. Baxley execute the
> release personally.  If you really think the estate is necessary for
> your purposes, I think it would only be fair to ask you to pay for
> the cost of that process on top of the amount of the actual
> settlement.

GEICO considered the option of not opening an estate for SCARBERRY; however, GEICO ultimately decided that it was in the best interest of the insureds to have an estate created.  Therefore, rather than having BAXLEY execute a release personally, and risk exposing the insureds to additional liability, GEICO hired attorney Angela Jones to set up an estate. [Exhibit W, deposition of Angela Jones, p. 53]. GEICO's conduct was above and beyond what was requested by Zawahry.  Ms. Jones attempted to contact Zawahry for several weeks in order to set up the estate.  [Exhibit V, GLC 0775].   Her attempts, however, were met with no response from Zawahry until after he had already filed the underlying action. [*Id*].  Zawahry's lack of responsiveness prevented GEICO's efforts to ensure that an estate was properly opened from being successful.

Zawahry's second request was for GEICO to issue a third check made out to "Robin Baxley and Sam Zawahry, her attorney."  The second check that GEICO had delivered to Zawahry was made out to the "Estate of Jesse Scarberry" and "Sam Zawahry." [Exhibit O, SZ 02936].  Zawahry's request for a third check was contingent on GEICO deciding not to protect its insureds by having an estate set up for SCARBERRY, and instead having BAXLEY execute a release on behalf of SCARBERRY.  Because GEICO chose to attempt to set up an estate for SCARBERRY, issuing a check to BAXLEY, rather than the personal representative of SCARBERRY's Estate, would have been inappropriate.  The only scenario

18

in which GEICO would have had to issue a third check made out to "Robin Baxley and Sam Zawahry, her attorney" is if BAXLEY were to execute a release on behalf of SCARBERRY. Because GEICO went above and beyond what it was requested to do in attempt to protect its insureds, GEICO's second check was made out to the appropriate individuals.

Zawahry's third request stated, "[i]t looks like you have not been asked to give disclosures under the insurance disclosure statute. Please do that now." [Exhibit S, GLC 0918-0919]. In addition, Zawahry stated:

> Particularly, there was a Liberty Mutual policy referred to on the traffic accident report. I do believe that if Ms. Sellers owned a car that was insured by Liberty or if her husband [sic] the terms of that policy might provide coverage for her. So please make sure to check that out and ensure we get those disclosures too.

On or about February 13, 2005, before even receiving a letter of representation from Zawahry, GEICO proactively sent Zawahry a letter containing an affidavit of the insureds' coverage and asking whether Zawahry would like a certified copy of the insurance policy. [Exhibit I, GLC 0965-0967]. Zawahry, however, never responded to GEICO's letter. [Exhibit Q, deposition of Zawahry at pages 153-154]. GEICO again asked Zawahry to advise if he would like a certified copy of the insurance policy in a letter dated March 11, 2005. [Exhibit K, GLC 0945]. Again, Zawahry failed to respond to this correspondence. [Exhibit Q, deposition of Zawahry at pages 153-154]. Thereafter, in his August 5, 2005 letter, Zawahry asked for "disclosures under the insurance disclosure statute." [Exhibit S, GLC 0918-0919]. GEICO again asked Zawahry if he wanted a copy of the policy when GEICO responded to Zawahry's August 5th letter on September 8, 2005. [Exhibit X, GLC

0929].  Instead of advising that he required a certified copy of the policy, Zawahry filed the underlying lawsuit.  [Exhibit AA, GLC 2850].

The insurance disclosure statute, Section 627.4137, Florida Statutes, requires that an insurer provide: (1) the name of the insurer, (2) the name of each insured, (3) the limits of the liability coverage, (4) a statement of any policy or coverage defense, and (5) a copy of the policy.  *See* Section 627.4137, Florida Statutes (2005).  Prior to Zawahry's August 5th letter, GEICO had proactively provided Zawahry with an Affidavit of Coverage.  [Exhibit I, GLC 0965-0967].  As explained above, GEICO had also asked Zawahry on two separate occasions to advise GEICO if he required a copy of the insurance policy, invitations to which Zawahry failed to respond.  Then, in a letter dated September 19, 2005, Zawahry stated that GEICO failed to comply with the requirements of his August 5th letter, in part because GEICO did not provide "a copy of the insurance policy."  [Exhibit Y, GLC 0916-0917].  GEICO responded to this letter on September 30, 2005, and enclosed a certified copy of the insurance policy.  [Exhibit Z, GLC 0912-0913].  Zawahry's contention that failure to provide a certified copy of the insurance policy precluded settlement is disingenuous in light of the fact that GEICO had repeatedly offered to provide same, but was consistently ignored.

Additionally, Zawahry's third request was that GEICO "check" into whether or not Sellers owned a car that was insured by Liberty Mutual.  [Exhibit S, GLC 0918-0919].  GEICO called Winnie Paulk three days after it received Zawahry's August 5th letter and asked her whether Sellers had any other automobile insurance policies.  [Exhibit U, GLC 2849].  Winnie Paulk indicated that Sellers had an insurance policy through Liberty Mutual

20

prior to GEICO, and that, at the time of the accident, Sellers was only insured by GEICO. [*Id*].  In GEICO's response to Zawahry's August 5th letter, GEICO stated that "[o]n the date of this accident, Layura Sellers did not own an automobile and resided with her mother, Winnie Paulk.  They have advised there were no other automobile insurance policies in effect on the date of loss." [Exhibit X, GLC 0929-0930].  As a result, GEICO clearly complied with Zawahry's request that GEICO "check" into whether or not Sellers had additional automobile insurance at the time of the accident.

Zawahry's fourth request states, "I ... **think** we would need to have language in any release **basically say[ing] something along the lines of** 'this release does not in any way affect any civil or criminal restitution that has been or may in the future be imposed against the releasee by a criminal court.'"  [Exhibit S, GLC 0918-0919](emphasis added).  This language is extremely permissive and evidences a fundamental misunderstanding of Florida law.  Zawahry did not demand that GEICO adopt the specific language that he set forth in the August 5th invitation to discuss settlement; instead, he simply stated that he "**thinks**" that such language, or language to that effect, should be included.  As a result, GEICO reasonably believed that inclusion of the suggested language was not a material term of Zawahry's August 5th letter.

Moreover, inclusion of Zawahry's proposed language would have had no effect whatsoever on the legal force of the release. The Florida Supreme Court in *Kirby v. State* stated that "a settlement and release of liability on a civil claim for damages between private parties does not prohibit the trial court from fulfilling its mandatory obligation to order

restitution in the criminal case." *Kirby v. State*, 863 So. 2d 238, 241 (Fla. 2003). Essentially, the Florida Supreme Court held in *Kirby* that a civil settlement agreement or release does not affect a court's ability to impose restitution in a criminal case. As a result, Zawahry's proposed release language would not have had any effect – with or without the language, the release would not have had any bearing on a court's ability to impose restitution in Sellers' criminal case. Therefore, whether GEICO included superfluous language tentatively suggested by Zawahry in the release, which would have had absolutely no effect, is irrelevant to whether GEICO acted in good faith.

Lastly, Zawahry's August 5th letter states that he "would **like** to have the re-issued check and these documents within 30 days." [Exhibit S, GLC 0918-0919](emphasis added). Again, this permissive language indicates that settlement of the case was not conditioned upon a strict thirty-day compliance period. GEICO received Zawahry's letter, which was addressed to William Todd, rather than to Lucy Terhart (the adjuster that had been attempting to contact Zawahry for approximately seven months), on or about August 8, 2005. [Exhibit T, GLC 0921]. GEICO responded to Zawahry's invitation to discuss settlement on September 8, 2005, approximately thirty-one days after receipt of same. [Exhibit Y, GLC 0916-0917]. Given the permissive language contained in the letter, and the fact that Zawahry did not specify whether he would "like" a response within thirty days of the date of the letter, within thirty days of receipt of the letter in GEICO's mail room, within thirty days of receipt of the letter by the adjuster handling the claim, or within thirty days of some other event, responding to Zawahry's requests in thirty-one days certainly did not constitute non-

22

compliance on the part of GEICO.  Instead, it showed GEICO's willingness to settle BAXLEY's claim against Layura Sellers and RAYMOND PAULK expeditiously, a desire that GEICO had expressed and evidenced since no later than eleven days after learning about the accident, when GEICO tendered a policy-limits check to BAXLEY's attorney.

## IV.    Conclusion

The facts of this action demonstrate no basis upon which a reasonable jury could conclude that GEICO acted solely on the basis of its own interest in attempting to settle BAXLEY's claim against Layura Sellers and RAYMOND PAULK.  *See Cardenas*, 2011 WL 111588; *Davidson*, Slip Copy, 2010 WL 4342084 (M.D.Fla. Oct. 26, 2010).  Instead, the undisputed facts demonstrate that GEICO acted promptly, diligently, and with due concern for its insureds' best interest.  *See Cardenas*, 2011 WL 111588 at page 9.  GEICO tendered the full $10,000 BI policy limits eleven (11) days after learning about the accident, attempted to contact Zawahry no fewer than sixteen (16) times before he finally communicated with GEICO, and responded appropriately to every request set forth in Zawahry's August 5th invitation to discuss settlement.  Despite GEICO's extensive efforts to resolve BAXLEY's claim, BAXLEY and her attorney brought the underlying lawsuit against GEICO's insureds because BAXLEY and/or Zawahry were unwilling to settle BAXLEY's claim for the death of her young son within the applicable $10,000 policy limits.  In short, no reasonably jury could find that GEICO acted in bad faith in handling the claim brought by BAXLEY against GEICO's insureds; therefore, GEICO is entitled to judgment as a matter of law in its favor.

**WHEREFORE**, GEICO respectfully requests that this Honorable Court enter summary judgment in its favor as to the causes of action brought by BAXLEY and BARNARD and grant any such further relief that this Court deems appropriate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of March, 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**S/ MEGAN M. HALL**
**B. RICHARD YOUNG**
Florida Bar No. 442682
ryoung@flalawyer.net
**MEGAN M. HALL**
Florida Bar No.: 0041695
mhall@flalawyer.net
Young, Bill, Fugett & Roumbos, P.A.
P.O. Drawer 1070
Pensacola, FL 32591-1070
(850) 432-2222 / 432-1444 - facsimile
Attorneys for Defendant, GEICO

24

**SERVICE LIST**
**ROBIN BAXLEY, as the Personal Representative of the Estate of MICHAEL**
**JESSE SCARBERRY and ROBERT F. BARNARD, as Personal Representative of**
**the Estate of RAYMOND PAULK, v. GEICO**
**Case No.: 5:10-cv-00213-RS-CJK**
**United States District Court, Northern District of Florida**

Lisha Bowen, Esq.
Swope, Rodante P.A.
1234 East 5th Avenue
Tampa, Florida 33605
(813) 273-0017
lishab@swopelaw.com
Counsel for Plaintiff
Via Notice of Electronic Filing

Michael S. Rywant, Esq.
Florida Bar No. 240354
mrywant@rywantalvarez.com
Rywant, Alvarez, Jones, Russo & Guyton, P.A.
2440 S.W. 76th Street, Suite 130
Gainesville, FL 32608
Tel - (352) 333-3700
Fax - (352) 333-3706
Attorney for Plaintiff Robert Barnard
Via Notice of Electronic Filing